```
             IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF TEXAS
                        HOUSTON DIVISION
```

MARC BAUMAN,                              §
                                          §
        Plaintiff,                  §
                                          §
v.                                        §   CIVIL ACTION NO. H-08-2882
                                          §
UNITED HEALTHCARE SERVICES,               §
INC. and UNITED BEHAVIORAL                §
HEALTH,                                   §
                                          §
        Defendants.                 §

                        MEMORANDUM AND ORDER

     Pending is United Healthcare Services, Inc. and United Behavioral Health's Motion for Summary Judgment (Document No. 16). After carefully considering the motion, response, reply, and the applicable law, the Court concludes as follows.

## I. Background

     This is an employment dispute in which Marc Bauman ("Plaintiff") complains that United Behavioral Health (hereinafter "Defendant"), a wholly owned subsidiary of United Healthcare Services, Inc., failed to hire him because of his age, 55, in violation of the Age Discrimination in Employment Act ("ADEA").[1] Defendant provides behavioral health and emotional wellness services.[2] One service Defendant provides to its members is called

---

[1] Document No. 22, ex. 1 (Bauman's Decl.).

[2] Document No. 16, ex. A at 2 (Gregory Aff.).

"Care Advocacy," which is a 24-hour call center staffed with Care Advocates who "ensure that the member's care is coordinated with providers, specialists and hospitals, and also in line with their insurance benefits."[3] In early 2007, Defendant decided to move the overnight and weekend telephonic Care Advocacy office to Houston, Texas.[4] Because of this transfer, Defendant placed employment ads for Care Advocates in Houston newspapers and internet job sites.[5] The ad proffered in evidence states that the Care Advocates position required "a master's degree and current mental health licensure (LCSW, LMFT, LMSW, LPC, Psych RN, PhD, or PsyD)," and that "[i]npatient psych and diagnostic experience is preferred."[6]

Plaintiff was one of approximately 130 individuals who expressed interest in the Houston Care Advocate position.[7] At the time, Defendant's recruiting program was outsourced to Hyrian, LLC.[8] Employees at Hyrian screened the applicants to determine if they met the minimum requirements of the Care Advocate position, and referred the qualified candidates to Defendant for interviews.[9]

---

[3] Id., ex. A ¶7.

[4] Id., ex. A ¶8.

[5] Id., ex. D.

[6] Id., ex. D.

[7] Id., ex. A ¶11.

[8] Id., ex. A ¶12.

[9] Id., ex. A ¶12.

On May 25, 2007, Plaintiff interviewed with Karen Gregory, Executive Director, After-Hours, and Brian Brooks, Clinical Program Manager, After-Hours.[10] Before the interview, Gregory reviewed Plaintiff's resume and job application. During the interview, Gregory asked Plaintiff the same series of preset questions that Defendant asked other candidates for the Care Advocate position.[11] The questions were intended to measure behavior; Gregory did not ask applicants about their qualifications because all interviewees had been found by Hyrian to meet the minimum job requirements.[12]

Gregory and Brooks rated Plaintiff as a "2" on a "1 to 5" scale on the "Interview Questions & Scoring" forms completed after the interview, and decided that Plaintiff should not be hired. Gregory describes her reasoning for the rating as follows:

> The main reasons Bauman was rated a "2" are reflected in my notes. First, the fact that Bauman had no clear inpatient psychiatric care experience was one reason he was rated a "2". . . . It is preferred that the candidate have had inpatient psychiatric care experience because a Care Advocate needs to understand the nature of the member's underlying medical condition and the purpose and nature of the proposed medical care for that member, when a Care Advocate is coordinating a member's care with providers, specialists and hospitals, in line with the member's insurance benefits. Based on his on-line application and statements made by him in his interview, Bauman had no inpatient psychiatric care experience.

---

[10] Id., ex. B at 125.

[11] Id., ex. A ¶14.

[12] Id., ex. A ¶¶12, 14.

> Second, we also rated Bauman a "2" because Brooks and I considered Bauman's self-reporting of a consistent pattern of problems with prior supervisors and peers as a negative. It tended to indicate to us that Bauman had difficulty working with others, which is very important in the after-hour/weekend Care Advocates position. . . .
>
> Third, Mr. Brooks and I considered Bauman's extremely nervous and anxious behavior, a negative because the job of after-hour/weekend Care Advocate requires one to deal with people in crises and to handle stressful, sometimes life-threatening situations, carefully, consistently and within the parameters of the law and UBH policy. Someone who is themselves extremely and excessively nervous and anxious in pressure situations, such as in an interview, is not a good fit for the job. As I noted, Bauman "[s]eemed very nervous throughout the interview and almost desperate." He had difficulty staying "on task" and responding to my standard questions. He spoke unusually fast. He requested water as he stated his mouth was very dry, and seemed very nervous and grandiose. In fact, as he spoke, white balls of saliva gathered at the edges of his mouth, which, along with other signs, demonstrated to me that Bauman was extremely and excessively nervous and anxious.[13]

Defendant hired twenty-four (24) Care Advocates in Houston, all of whom received a rating of "3" or above on their "Interview Questions & Scoring" forms.[14] Plaintiff claims that the real reason he was not hired is because of his age. Defendant now moves for summary judgment.

---

[13] Id., ex. A ¶¶18-21.

[14] Id., ex. A ¶23, ex. F.

## II. Discussion

### A. Summary Judgment Standard

Rule 56(c) provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The movant must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. Id. "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id.

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the

nonmoving party. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. <u>Kelley v. Price-Macemon, Inc.</u>, 992 F.2d 1408, 1413 (5th Cir. 1993). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." <u>Id.</u> Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." <u>Anderson</u>, 106 S. Ct. at 2513.

To withstand a no-evidence motion for summary judgment, the nonmovant must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 106 S. Ct. at 2552. If the nonmovant fails to make such a showing, "there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial," and summary judgment must be granted. <u>Id.</u>

B.   <u>Age Discrimination</u>

Under the ADEA, "[i]t shall be unlawful for an employer . . . to fail or refuse to hire . . . any individual or otherwise discriminate against any individual with respect to his

6

compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Unlawful discrimination under the ADEA may be established through either direct or circumstantial evidence. <u>Berquist v. Wash. Mut. Bank</u>, 500 F.3d 344, 349 (5th Cir. 2007). Because Plaintiff lacks direct evidence of discrimination, his claim is analyzed under the burden-shifting framework from <u>McDonnell Douglas Corp. v. Green</u>, 93 S. Ct. 1817 (1973). *See, e.g.*, <u>Berquist</u>, 500 F.3d at 349; <u>Cervantez v. KMGP Services Co. Inc.</u>, No. 08-11196, 2009 WL 2957297, at *3 (5th Cir. Sept. 16, 2009) (unpublished op.). Under this framework, the plaintiff must first create a presumption of unlawful discrimination by presenting evidence of a *prima facie* case. After making this *prima facie* showing, the burden then shifts to the defendant-employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. <u>Lee v. Kan. City S. Ry. Co.</u>, 574 F.3d 253, 259 (5th Cir. 2009). If the employer can articulate such a reason, the inference of discrimination falls away, and the burden shifts back to the plaintiff to establish that his employer's proffered reason is merely a pretext for discrimination. <u>Id.</u> "The burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision." <u>Gross v. FBL Financial Services, Inc.</u>, 129 S. Ct. 2343,

7

2352 (2009). The burden of persuasion remains on the plaintiff to "prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." Id.

Defendant asserts that Plaintiff was not hired because he scored a "2" on a "1 to 5" scale for his interview, and no candidate that was rated "2" or lower was hired.[15] As it were, a number of other candidates in the protected age group, including some older than Plaintiff, scored higher on their interviews and were hired.[16] Defendant asserts Plaintiff, however, received a "2" rating specifically because (1) he had no clear inpatient psychiatric care experience; (2) he self reported a pattern of conflict with prior supervisors and peers; and (3) he was "extremely and excessively nervous and anxious" and seemed "desperate" during the interview, traits that do not lend themselves to dealing with people in crises and who are sometimes facing life-threatening situations. This explanation is sufficiently "clear and reasonably specific" to constitute a legitimate, non-discriminatory reason for not hiring Plaintiff. See Joseph v. City of Dallas, 277 F. App'x 436, 440-41 (5th Cir. 2008) (finding that the defendant's explanation that the plaintiff received a failing score on his interview because he "gave poor answers to the hypothetical police scenarios and seemed unable to logically

---

[15] Document No. 16 at 1.

[16] Id., ex. A ¶32.

process information" was sufficiently "clear and reasonably specific" and thus constituted a legitimate, non-discriminatory reason for not hiring him). Therefore, Plaintiff must proffer sufficient evidence creating a genuine issue of material fact that Defendant's stated reason for not hiring him was a mere pretext for discrimination.

Plaintiff asserts that Defendant's proffered reason is pretextual for four reasons. First, Plaintiff argues that Karen Gregory's criticism of his nervousness in his interview is "highly suspect" because Gregory contradicted that testimony in her deposition when she stated that "a little nervousness is good."[17] Plaintiff takes this quote out of context. While Gregory did state that during interviews "a little nervousness is good," she further testified that Plaintiff "appeared to be *extremely* nervous" which led her to believe that he would not well handle the pressure of the Care Advocate position.[18]

Second, Plaintiff asserts that if Gregory was concerned about how Plaintiff could handle the stress of the Care Advocate position, then she should have contacted Plaintiff's previous supervisors to ask how Plaintiff handled stress in previous jobs.[19]

---

[17] Document No. 22 at 12, ex. 2 at 39.

[18] Id., ex. 2 at 39 (emphasis added); Document No. 16, ex. A ¶20-21.

[19] Document No. 23 at 12.

9

This is not evidence that Gregory's evaluation of Plaintiff's ability to perform under pressure was pretextual. Gregory did not contact *any* interviewees' prior employers.[20] Plaintiff was evaluated in the same way as all of the other interviewees--and all interviewees were asked the same questions. Even if Gregory's practice not to contact previous employers were erroneous or arbitrary, it would not constitute evidence of unlawful age discrimination. *See* Bienkowski v. Am. Airlines, Inc., 851 F.2d 1503, 1508 (5th Cir. 1988) ("The ADEA cannot protect older employees from erroneous or even arbitrary personnel decisions, but only from decisions which are unlawfully motivated. Even if the trier of fact chose to believe an employee's assessment of his performance rather than the employer's, that choice alone would not lead to a conclusion that the employer's version is a pretext for age discrimination." (citation omitted)).

Third, Plaintiff asserts that Defendant must have discriminated against him based on age because it hired three younger candidates--Ralph Alcid, Nicole Brooks, and Melissa Sisti--who did not have a master's degree like Plaintiff.[21] Because Defendant listed a master's degree as a requirement for Care Advocates in its job posting,[22] Plaintiff argues that these

---

[20] Document No. 22, ex. 2 at 42-44.

[21] Document No. 22 at 9-10.

[22] Document No. 16, ex. D.

candidates are not even minimally qualified for the position. That Defendant hired persons who did not meet all of the listed requirements in its job postings does not create a material fact issue of pretext. See Price v. Federal Express Corp., 283 F.3d 715, 722-23 (5th Cir. 2002). In Price, the plaintiff argued that FedEx's given reason for selecting another candidate over him was pretextual because the other candidate did not have a college degree, which was listed as a requirement in the job posting. Id. at 722. The Fifth Circuit found that the plaintiff's "attempts to undermine [the other candidate's] qualifications are unpersuasive." Id. at 722. The candidate that was hired had 102 hours of educational credit, which FedEx could have reasonably found as "equivalent" to a college degree, especially when considered with the candidate's military training. Id. at 722. The Fifth Circuit held that while the plaintiff "clearly met the qualifications" for the position, the other candidate's skill set and training "could have reasonably outweighed [the plaintiff]'s better education and longer tenure with the company." Id. at 723.

Similar to Price, the persons hired over Plaintiff lacked Master's degrees but had significant experience in the relevant field. Alcid, Brooks, and Sisti were all registered nurses with extensive inpatient psychiatric experience.[23] Plaintiff "had no

---

[23] Karen Gregory described Alcid, Brooks, and Sisti's qualifications in her affidavit:

clear inpatient psychiatric care experience."[24] According to Gregory, "[t]his made all three of them better qualified than [Plaintiff]."[25] Here, Plaintiff has proffered no competent evidence creating a fact issue that it was unreasonable for Defendant to consider Alcid's, Brooks's, and Sisti's training and extensive experience as equivalent or better than Plaintiff's master's degree. *See* Price, 283 F.3d at 723.

Finally, Plaintiff argues that summary judgment is improper because he was "clearly better qualified for the position" of Care Advocate than Alcid, Brooks, and Sisti.[26] A plaintiff may survive summary judgment by submitting evidence that he was "clearly better

---

> Mr. Alcid had worked from 1994 to 2000 at the Houston Northwest Medical Center as a "medical/psychiatric charge nurse" providing "excellent quality care to Adult medical psychiatric patients." Ms. Brooks had worked from 1999 to 2007 at Shadow Mountain Behavioral Health in Tulsa, Oklahoma, as a "registered nurse – pediatric psychiatry/admissions intake counselor," during which time she provided direct patient care and supervised and directed care in response to psychiatric emergencies. So, as Ms. Brooks stated in her cover letter, she had "extensive psychiatric nursing experience." Ms. Sisti had worked as a psychiatric nurse for Bayshore Medical Center from May 1993 to February 1995, for Intracare North Hospital from January 1997 to April 2001, and for St. Joseph Hospital from August 2003 through the date of her interview with UBH in May 2007.

Document No. 16, ex. A ¶35.

[24] Id., ex. A ¶18.

[25] Id., ex. A ¶35.

[26] Document No. 22 at 12-13.

qualified" than the employee selected for the position. Runnels v. Texas Children's Hosp. Select Plan, 167 F. App'x 377, 383 (5th Cir. 2006) (citing Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 356-57 (5th Cir. 2001)). "However, the bar is set high for this kind of evidence because differences in qualifications are generally not probative evidence of discrimination unless those disparities are 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'" Celestine, 266 F.3d at 357 (quoting Deines v. Texas Dept. of Prot. & Regulatory Servs., 164 F.3d 277, 280-81 (5th Cir. 1999)). The relative value of a Master's degree *vis-a-vis* years of hands-on experience as a health care provider in inpatient psychiatric units, already has been discussed. The differences in the interview performances of Plaintiff versus Alcid, Brooks, and Sisti further establish that a reasonable and impartial person could have chosen Alcid, Brooks, or Sisti over Plaintiff. In the "Interview Questions & Scoring" form, the interviewers for Mr. Alcid rated him between "effective" and "outstanding," and noted, "Recommend for hire – great experience!"[27] Ms. Brooks was rated a "4," meaning "strong."[28] Sisti was rated a "3," which means

---

[27] Document No. 16, ex. F Tab 2.

[28] Id., ex. F Tab 4.

"effective," and the interviewer noted she was a "fair candidate."[29] Plaintiff's "Interview Questions & Scoring" form, however, contains concerns about Plaintiff's problems with previous supervisors and peers, and comments that Plaintiff "seemed very nervous and grandiose."[30] In sum, Plaintiff has not raised a genuine issue of material fact that he is a clearly better qualified Care Advocate than Alcid, Brooks, or Sisti.

III. Order

For the foregoing reasons, it is

ORDERED that United Healthcare Services, Inc. and United Behavioral Health's Motion for Summary Judgment (Document No. 16) is GRANTED; and Plaintiff Marc Bauman's claim is DISMISSED WITH PREJUDICE.

The Clerk will enter this Order and provide a correct copy to all parties.

SIGNED at Houston, Texas, on this 30th day of December, 2009.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

---

[29] Id., ex. F Tab 21.

[30] Id., ex. E.